## BLEECKER v. DRURY.
### No. 66.

Circuit Court of Appeals, Second Circuit.
May 28, 1945.

See also 3 F.R.D. 325.

Russell V. Bleecker, of Cleveland, Ohio, pro se.

John F. Dwyer, of Buffalo, N. Y., for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an action for libel and slander by plaintiff, an attorney and resident of Ohio, against defendant, an attorney and resident of New York, jurisdiction being based upon the diverse citizenship of the parties. Plaintiff appeals from the order of the District Court granting defendant's motion for summary judgment on the first of three causes of action set forth in the complaint. This cause was for an alleged libel contained in a memorandum submitted by defendant to the Industrial Board of the State of New York on behalf of the latter's client, a seaman seeking compensation for injuries sustained while ashore. Plaintiff was the employer's lawyer throughout the compensation proceeding, which began on November 8, 1940. After hearing before a referee, an award of compensation was made, which, upon the plaintiff's appeal, the Board reaffirmed. Thereupon plaintiff made numerous applications to the Board for reconsideration, primarily challenging the Board's jurisdiction. In consequence of the resulting delay, it was not until April 21, 1943, that the Board made its findings of fact and rulings of law, which were necessary to complete the appeal to the Appellate Division of the New York Supreme Court, of which plaintiff had served notice. A month later the Board again granted a reconsideration; and it is in connection therewith that defendant submitted the memorandum containing the allegedly libelous statements. Before the submission of the memorandum, plaintiff sought an injunction in the United States District Court for the employer and against the employee and the Industrial Board. And after having first offered the Attorney General of the State of New York, representing the Board, indefinite time within which to plead, plaintiff consented to a voluntary nonsuit as to it. Later the court denied the injunction.

One of the allegedly libelous statements of the memorandum makes reference to this last proceeding: "The appeal by the State Insurance Fund on all grounds, including coverage, supplies the missing piece to a puzzle which saw Bleecker, the employer's attorney, refusing the protection of the insurance so kindly offered him by the State Fund—Bleecker being hired by the attorney for the third party to take depositions in said action—and returning the favor by hiring him as counsel in the injunction action—parties who should be at odds, resting comfortably together in a cooperative but expensive pooling of resources." The other offending statements refer somewhat more clearly to plaintiff's alleged delaying tactics, the first stating: "The attitude of Bleecker sheds a clear light upon the entire matter. Although already having gone to the expense of printing the record on appeal to the Appellate Division, he continued to make requests for review. We can assume that he was paid well for each request. If so, the one based on the Aguilar case [1] was clearly the obtaining of money under false pretenses." And the second adding: "In addition it is a fraud on the court but the reprehensible conduct does not stop there. Perhaps relying on past experiences in his own state, he mistakenly offered a bribe to official laziness."

Plaintiff alleged that these statements charged him "with the crime of obtaining money under false pretenses, and unethical, illegal and reprehensible conduct in relation to his clients, which if true would subject the plaintiff to disbarment from the practice of his profession," and that they were knowingly and willfully intended to injure plaintiff in his profession. The District Court first denied defendant's motion to dismiss the complaint, D.C., 3 F.R.D. 325; but then on defendant's motion addressed to the cause which concerned this judicial proceeding, supported by an affidavit setting forth the plaintiff's tactics of delay, it granted summary judgment on the ground that the statements in question were privileged, as relevant material duly published in the course of a judicial proceeding.

■ Having regard for an attorney's excitement in the heat of litigation, as well as the professional proclivity for high-flown and often meaningless verbiage, we think it a strain upon credulity to view defendant's memorandum as a charge of crime or as more than a bombastic characterization of plaintiff's Fabian maneuvers. Of course, the memorandum is quite lacking in that dignity and restraint which is to be expected of an officer of the court; but unfortunately plaintiff, if he ventures into the modern judicial arena, must expect to expose himself to blows more direct than these. The first statement quoted says little enough; if it is intelligible at all, it appears to object to co-operation between insured and insurer, surely an innocent, if unsporting, tactic. The statements attacking the retainer—if any—for a rehearing based on a recent Supreme Court case and the claim of fraud upon the court make sense only as a foolish and involved way of saying that the case was not in point. And the characterization of indefinite time to plead as a "bribe to official laziness" is mere rhetoric. This is trivial and undignified stuff, but hardly worthy of a solemn lawsuit and even more solemn appeal.

■ If, however, these statements may be expanded into some charge properly considered as a libel per se, nevertheless the District Court correctly held them to be privileged. Plaintiff, relying on cases such as U. S. Smelting, Refining & Mining Co. v. Evans, 8 Cir., 35 F.2d 459, certiorari denied 281 U.S. 744, 50 S.Ct. 350, 74 L.Ed. 1157, and Joseph H. Weiderhoff, Inc. v. Neal, D.C.W.D.Mo., 6 F.Supp. 798, contends that the proceeding before the Industrial Board was not a judicial proceeding, and that the material complained of is, therefore, actionable. But these cases involve quite a different problem, namely whether a federal court may enjoin a proceeding before an administrative agency, despite the prohibition of 28 U.S.C.A. § 379. They do not aid in answering our immediate question. Privilege is founded on public policy. Fearless administration of justice requires, among other things, that an attorney have the privilege of representing his client's interests, without the constant menace of claims for libel. Here the Board conducts hearings in which the admissibility of evidence is ruled upon by the member or officer presiding. It limits the rights of persons to appear before it and in substance observes a procedure akin to that of the courts of record of New York. It makes full and conclusive deter-

---

[1] Obviously a reference to Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107.

minations of both questions of fact and of law, and an appeal may be taken from its determination to an appellate court. N.Y. Workmen's Compensation Law, §§ 20, 23, 24, 119, 121, Consol.Laws N.Y. c. 67. The adequate representation of a client and the full presentation of pertinent facts are just as important in this proceeding as in those before any other tribunal. We see no reason why statements made to the Board should not be held to be privileged to the same extent as those made in connection with any judicial proceeding.[2]

Plaintiff makes the further contention that, even if the proceeding before the Board is judicial, the privilege does not apply to the statements complained of, since these were neither pertinent nor material to the question before the Board. While it is true that the American authorities extend the privilege only to relevant and material communications, under New York law "the privilege embraces anything that may possibly be pertinent." Cardozo, J., in Andrews v. Gardiner, 224 N.Y. 440, 445, 121 N.E. 341, 343, 2 A.L.R. 1371. In that case the privilege was extended to a statement by an attorney in connection with an application before the Governor for a pardon, to the effect that one of the opposing attorneys was "an unprincipled, blackmailing, depraved scoundrel." We need not go so far. For the material complained of simply charged plaintiff with lack of good faith and deliberate frivolous prolonging of the litigation.[3] Had defendant convinced the Board that the plaintiff's actions constituted willful delay, misrepresentation, or unfair practice, the Board certainly would have been led to deny the petition. The statements complained of were therefore pertinent and privileged.

Affirmed.

---

[2] That this court ultimately held the seaman in question to be within the jurisdiction of admiralty, Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F.2d 416, does not change the fact that in its proceedings the Board was acting judicially.

[3] Plaintiff makes much of the heading employed by defendant in his memorandum, "Sometimes frank discussion of extraneous issues is helpful." That defendant initiated his rhetorical excursion with this half apology is hardly enough, however, to change the legal consequence under New York law.